**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANTHONY ANZIDEO, et al.** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | **Civil Action No. 20-3336-KSM** |
| **v.** | : | |
| | : | **Oral Argument Requested** |
| **CITY OF PHILADELPHIA** | : | |
| | : | |
| **Defendant.** | : | |

**DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

On October 7, 2020, Plaintiffs filed an Amended Complaint alleging violations of the

First and Fourteenth Amendments to the United States Constitution and the Pennsylvania

Constitution. Defendant moved to dismiss the complaint pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure on November 2, 2020. Plaintiffs filed a response to that motion

on November 25, 2020. In response, the City files this reply memorandum in support of their

Motion to Dismiss.

## ARGUMENT

**I.     The City did not "hop scotch" the *Pickering* analysis.**

Contrary to Plaintiffs' assertions, the City did not "hop-scotch" or "fail to cite" *Pickering*.

The City dedicated more than ten pages to this balancing test in its brief. *See* Mot. to Dismiss

("MTD"), Dkt. No. 18, at pp. 30, 32-42 (arguing that the PPD's[1] interest in maintaining

effectiveness and public trust far outweighs Plaintiffs' interests in their racist, Islamophobic, and

violent speech).

---

[1] Terms not otherwise defined herein shall have the meanings ascribed to them in the City's
   Motion to Dismiss, Dkt. No. 18.

The *Pickering* balancing test is the fulcrum of a First Amendment retaliation claim—after establishing the prerequisites of citizen speech on a matter of public concern, a court must engage in the balancing of the parties' competing interests *before* moving on to the other considerations cited by Plaintiffs in their response. *See Pro v. Donatucci*, 81 F.3d 1283, 1288 (3d Cir. 1996) (only after engaging in the *Pickering* balancing test does the court consider whether the protected activity was a "substantial or motivating factor in the retaliatory action" and whether the employer "would have taken the adverse employment action" absent the protected conduct).

While the *Pickering* balancing test is fact intensive, it is still one of law and can be decided based on the undisputed facts already on the record.[2]  Plaintiffs do not dispute that they authored the posts attributed to them in the Amended Complaint.  The City does not dispute that, for purposes of this motion, that Plaintiffs wrote the posts as private citizens and that the posts touched upon areas of public concern.  Because these facts are not disputed, this Court need only decide if the Plaintiffs' First Amendment interests outweighed the PPD's operational interests.

On this point (and contrary to Plaintiffs' argument), the City does not need to prove—at any point in the case—that the posts actually caused disruption.[3] A showing of probable future

---

[2] Other Courts have applied *Pickering* balancing at the pleadings stage.  *See Garza v. Escobar*, 972 F.3d 721, 728 (5th Cir. 2020) (where the reasonable inferences drawn from a complaint do not "plausibly show that the employee's interests outweigh the employers . . . *Pickering* balancing can be performed at the motion-to-dismiss stage . . . . it would be 'illogical to stay that something is a question of law, and that it is reviewed de novo, yet it can never be decided on the pleadings.'" (quotations omitted); *Duke v. Hamil*, 997 F. Supp. 2d 1291, 1301-02 (N.D. Ga. 2014) (on motion to dismiss, university police officer's interest in Facebook post of confederate flag captioned with "It's time to start another revolution" did not outweigh employer's operational interests and maintaining public trust).

[3] Although not required to defeat Plaintiffs' claims, the City Defendants still maintain that the nationwide publication of the posts by the Plain View Project and Buzzfeed is in of itself sufficient to establish actual disruption.  *See* MTD at p. 34, n. 29.  Plaintiffs suggest that this

disruption can satisfy the balancing test, so long as the employer's prediction is reasonable. *See Waters v. Churchill,* 511 U.S. 661, 673 (1994) (plurality opinion).  Here, the PPD based their disciplinary decisions on a reasonable prediction that racist, violent, and Islamophobic speech would be disruptive—categories already deemed as disruptive to police and fire departments by the Courts, as a matter of law, in *Pappas*, *Locurto*, *Sabatini*, and *Grutzmacher* (hence, the "per se" language).  This prong is dispositive in the City's favor—even at this juncture—when balancing free speech rights against the latitude and deference afforded police departments to regulate an employee's disruptive speech.  *See Kelley v. Johnson*, 425 U.S. 238, 246 (1976).

Lastly, Plaintiffs manufacture a factual dispute citing the fact that the PPD did not specifically indicate which specific Facebook posts formed the basis of their disciplinary decisions.  Even if this were true, the Plain View Project ("PVP") published at least one, if not many, unprotected posts attributable to each Plaintiff.  That PVP may also have published "protected" posts does not create a legitimate factual dispute.  Here, given the sheer number of unprotected Islamophobic, racist, bigoted, and/or violent posts, it would be implausible to infer that any arguably protected posts played any substantial or motivating role in their discipline. *See Mt. Healthy City Sch. Dist. Board of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *cf. Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (given "more likely explanations" for detention, factual allegations did not plausibly establish discriminatory motive).  Moreover, Plaintiffs cannot

---

Court should discount the disruption caused by the public reaction to the posts.  Pl.'s Response, Dkt. No. 24  at p. 22.  However, because the police department directly serves the public and has contact with them, the public's reaction to the posts is extremely relevant to the *Pickering* analysis. *See, e.g.*, *Festa v. Westchester Med. Ctr. Health Network*, 380 F. Supp. 3d 308, 318-19 (S.D.N.Y. 2019) ("Where a Government employee's job quintessentially involves public contact, the Government may take into account the public's perception of that employee's expressive acts in determining whether those acts are disruptive to the Government's operations.")

reasonably argue that the PPD would have reached a different disciplinary decision if the "protected posts" were out of the picture. *Mt. Healthy*, 429 U.S. at 285 (defendants may defeat retaliation claim if the same action would have been taken in absence of the protected conduct). To illustrate, it is implausible that the PPD would not have terminated Mr. Przepiorka for his "Death to Islam" post (which is unprotected) if he had never published his arguably protected posts (*i.e.* his post of the Rock wearing a shirt that says "Stomp My Flag[;] I'll Stomp Your Ass.") Przepiorka App'x at 34.  This Court does not need to ignore common sense, Plaintiffs' argument that *some* of their speech may be protected does not render their claimed entitlement to relief plausible in this case.

**II.    Plaintiffs' new factual assertions—*i.e.* that the posts were "old" and made anonymously—are irrelevant.**

Plaintiffs repeatedly assert that their Facebook posts were made years ago, that they were private, and that they did not identify themselves as Philadelphia Police Officers in their posts. *See* Pl.'s Response, Dkt. No. 24, at pp. 4-5, 12-15, 17, 25-29.  The age and attempted anonymity of the posts are considerations that have no bearing on whether those posts are disruptive to the PPD's integrity and mission.  The fact that these posts were found, nationally published, and subsequently discovered by PPD is the controlling consideration.

Even if Plaintiffs maintained private pages and did not identify themselves as officers on them, they still accepted the risk that their posts, identities, and occupations would be discovered

and published to a wider audience than intended.[4]  Despite their concealment efforts, PVP was able to verify that the individuals publishing those posts were police officers.[5]

The age of the posts is also irrelevant. Although some posts dated back to 2012, they were nevertheless unearthed to the general public—for the first time—in 2019.  No matter how Plaintiffs try to recast their speech, calling for "Death to Islam" and labeling African-Americans as "thugs" was just as offensive and disruptive in 2012 as it is today.  When the posts gained national attention in 2019, the die was cast—upon their discovery, the Police Department could not, and did not, turn a blind eye.

**III.   The Buzzfeed Article is admissible because it is not inadmissible hearsay and because it is referenced in Plaintiffs' Amended Complaint.**

Despite specifically referencing the Buzzfeed Article in their Amended Complaint, Plaintiffs argue that it is inadmissible hearsay and was improper for the City to attach it to the Motion to Dismiss. This is incorrect for two reasons. First, the Buzzfeed Article is not being offered for the truth of the matter asserted. The rule against hearsay provides a statement is inadmissible when it is made by an out-of-court declarant and is offered for the truth of the matter asserted in the statement. Fed. R. Evid. 801,  Here, the City offers the Buzzfeed article not to prove that its contents are true, but as the event that triggered public outcry and alerted PPD to

---

[4] *See, e.g.*, *Pappas v. Giuliani*, 290 F.3d 143, 147-48 (2d Cir. 2002) (fact that police employee attempted to conceal his identity was irrelevant "because he took the risk that the effort would fail"); *Sabatini v. Las Vegas Metro. Police Dep't*, 369 F. Supp. 3d 1066, 1074 (D. Nev. 2019) (investigator could infer through posts and google search that plaintiff was a corrections officer); *Duke v. Hamil*, 997 F. Supp. 2d 1291, 1302 (N.D. Ga. 2014) (despite intent for post to be viewed only by small audience, the "post became public after someone provided the image to a television station," demonstrating "the very gamble individuals take in posting content on the Internet and the frequent lack of control one has over its further dissemination").

[5] PVP explains on their webpage their methodology to deciphering the posts and then verifying that the posts belonged to police officers.  *See* Plain View Project, About - Methodology, https://www.plainviewproject.org/about (last visited Dec. 14, 2020)

the disruptive posts. The Buzzfeed Article, and others, obliged PPD to conduct its own investigation, which subsequently lead to the disciplinary action at issue. The Third Circuit has found such evidence admissible to show the reason why an employer took action against an employee. *Larochelle v. Wilmac Corp.*, 769 F. App'x 57, 65 (3d Cir. 2019) (holding that handwritten statements in a former employee's personnel file were admissible as non-hearsay, in an employment discrimination action, where the statements were offered not for their truth but for their effect on listener, i.e., to explain why employer terminated employee).

Second, even if the Buzzfeed article were otherwise inadmissible hearsay, it is admissible here because it is referenced by Plaintiffs in their Amended Complaint. The doctrine of 'opening the door,' sometimes referred to as 'curative admissibility,' provides that when one party introduces inadmissible evidence, the opposing party thereafter may introduce inadmissible evidence to rebut or explain the prior evidence. *Healy v. Haverford Twp.*, 462 F. App'x 224, 227 (3d Cir. 2012) (citing *Gov't of Virgin Islands v. Archibald*, 28 V.I. 228, 238 (3d Cir. 1993)). Here, the Plaintiffs reference the Buzzfeed Article numerous times throughout the amended complaint. Am. Compl. ¶¶ 1, 40-42, 44, 94, 116, 161-62, 193, 196, 210, 279, 294. Since the Plaintiff has opened the door on this subject, the Defendants should be permitted to introduce the Buzzfeed Article.

## IV.   Plaintiffs seek ambiguous and impermissible relief under the Pennsylvania Constitution.

In the Amended Complaint, and in their Response, Plaintiffs assert that they are seeking "declaratory relief" for alleged violations of the Pennsylvania Constitution. The City first notes that it is unclear specifically what sort of declaratory or injunctive relief is sought in the Amended Complaint. Nevertheless, even well-pled requests for injunctive or declaratory relief under the Pennsylvania Constitution should be dismissed.  First, Article I § 7 "contains no

provision, express or implied, which creates a private right of action for violations of an individual's right to free speech." *Lees v. W. Greene Sch. Dist.*, 632 F. Supp. 1327, 1335 (W.D. Pa. 1986); *see also Eisen v. Temple Univ.*, No. Civ. A. 01-4165, 2002 WL 32706, at *1 (E.D. Pa. Jan. 7, 2002).  Moreover, the Pennsylvania Constitution does not provide greater rights and protections to public employee's speech other than those guaranteed by the First Amendment to the United States Constitution.  *Lees,* 632 F. Supp. 2d at 1335.  As such, even if Plaintiffs could bring a private action, the claims under Article I § 7 should be dismissed for the same reasons their First Amendment claims fail.  *Id.*; *see also Montanye v. Wissahickon Sch. Dist.*, 2003 WL 22096122, at *13 (E.D. Pa. Aug. 11, 2003)).  In the alternative, this Court should decline to exercise supplemental jurisdiction over this claim.  *See, e.g. Diesinger v. West Pikeland Twp.*, No. 09-1237, 2009 WL 2837743, at *4 (E.D. Pa. Sept. 2, 2009).

**V.**   **Plaintiffs do not have standing to bring a Fourteenth Amendment claim under the vagueness doctrine; nor can they manufacture such standing by conflating it with arguments regarding the alleged arbitrary application of the Social Media Policy.**

On pages 29-35 of the Response, Plaintiffs assert that they have standing to bring a Fourteenth Amendment claim because the Social Media Policy under which they were punished was too vague for Plaintiffs to know what conduct was forbidden and arbitrarily enforced. However, Plaintiff's cannot establish standing under the vagueness doctrine because the Social Media Policy has clearly defined parameters, which were undoubtedly violated by the Plaintiffs' Facebook posts. *See* MTD at Section VI.A. To the extent that Plaintiffs assert that the Social Media Policy was unevenly applied posts made by non-plaintiff employees, they have not alleged that the City knew these posts existed at the time Plaintiffs were disciplined. Even if the City was aware of these posts, an unequal application of the Social Media Policy does not raise questions as to the validity of the Social Media Policy such to establish standing for Plaintiffs under the vagueness doctrine. See *Id.* at Section VI.B.

Respectfully submitted,

**CITY OF PHILADELPHIA**
**LAW DEPARTMENT**

/s/ Brian Matthew Rhodes
BRIAN MATTHEW RHODES
Dated: December 14, 2020                    Senior Attorney

APPROVED: _____

**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANTHONY ANZIDEO, et al.** | : | |
| **Plaintiffs,** | : | |
| **v.** | : | **Civil Action No. 20-3336-KSM** |
| **CITY OF PHILADELPHIA** | : | **Oral Argument Requested** |
| **Defendant.** | : | |

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the date listed below the foregoing Motion for Leave to File Memoranda of Law in Excess of Page Limit was filed electronically and made available for download and viewing.

Respectfully submitted,

**CITY OF PHILADELPHIA
LAW DEPARTMENT**

<u>/s/ Brian Matthew Rhodes</u>
BRIAN MATTHEW RHODES
Senior Attorney,
Dated: December 14, 2020                    City Solicitor